[No. B086616. Second Dist., Div. Six. Dec. 19, 1995.]

JOSE CISNEROS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, DANCING STAR
RANCH et al., Respondents.

**COUNSEL**

William A. Herreras for Petitioner.

Krimen, Klein, Da Sliva, Daneri & Bloom and Robert A. La Porta for Respondents.

**OPINION**

**STONE (S. J.), P. J.**—Here we hold that, when a qualified injured worker signs a compromise and release which states he is not interested in receiving vocational rehabilitation services and which also states that the agreement

does not release any claim to rehabilitation benefits, the Workers' Compensation Appeals Board is not required to make a finding pursuant to California Code of Regulations, title 8, section 10870.[1] We also hold that, if the worker does not timely object to the termination of rehabilitation services, he must come within the requirements of Labor Code section 5410 in order to reopen rehabilitation.[2] However, because applicant alleges that he was "required" to decline rehabilitation in order to receive the benefits of the compromise and release, we remand the matter to the board to determine whether there is credible evidence he misunderstood the terms of the agreement.

## FACTS

On February 15, 1993, applicant Jose Cisneros injured his spine and back while working as a farm laborer for defendant Dancing Star Ranch, insured by the State Compensation Insurance Fund. He has been represented by the same attorney throughout these proceedings. He was found to be a qualified injured worker entitled to rehabilitation services and benefits.

On September 17, 1993, he settled his case for $15,000 pursuant to a board-approved compromise and release which states in relevant part: "Unless otherwise expressly ordered by a workers' compensation judge, approval of this agreement DOES NOT RELEASE ANY CLAIM APPLICANT MAY NOW OR HEREAFTER HAVE FOR REHABILITATION OR BENEFITS IN CONNECTION WITH REHABILITATION." The agreement includes the following handwritten sentence: "The applicant stipulates that he has no interest in participating in vocational rehabilitation and shall execute a declination of such benefits concurrently herewith." An attachment to the compromise and release states that the claims being settled include "vocational rehabilitation temporary disability, vocational rehabilitation maintenance benefits, and all

---

[1]California Code of Regulations, title 8, section 10870, titled "Approval of Compromise and Release," reads in relevant part: "No agreement shall relieve an employer of liability for vocational rehabilitation benefits unless the Workers' Compensation Appeals Board makes a finding that there is a good faith issue which, if resolved against the injured employee, would defeat the employee's right to all workers' compensation benefits."

All further statutory references are to the California Code of Regulations unless otherwise stated.

[2]Labor Code section 5410 reads in relevant part: "Nothing in this chapter shall bar the right of any injured worker to institute proceedings for the collection of compensation, including vocational rehabilitation services, within five years after the date of injury upon the ground that . . . the provision of vocational rehabilitation services has become feasible because the employee's medical condition has improved or because of other factors not capable of determination at the time the employer's liability for vocational rehabilitation services otherwise terminated."

vocational rehabilitation benefits through the date of the order approving compromise and release.

The "Employee Statement of Declination of Vocational Rehabilitation Services" (DWC Form RU-107) signed by applicant on September 17, 1993, is written in English and contains the following relevant statements: "If you decline rehabilitation services, your right for rehabilitation services will end upon the approval of the Rehabilitation Unit. This means your employer will not be required to provide rehabilitation services to you at a later date, unless otherwise determined pursuant to the Rules and Regulations of the Workers' Compensation Appeals Board in accordance with Labor Code Section 5410. . . . [¶] . . . Your right to rehabilitation is separate from your other Workers' Compensation Benefits and cannot under the Labor Code be terminated by a cash payment to you. If you are not ready to participate now in rehabilitation, but might be later, it is possible to delay your participation in rehabilitation for a period of time. . . . [¶] The injured employee states: I have read this statement of Declination for Vocational Rehabilitation Services." Applicant's attorney signed that portion of the declination which states he has "reviewed" the form with his client and has "explained the effects of declining vocational rehabilitation benefits."

The September 17, 1993, order approving the compromise and release does not make a finding pursuant to section 10870, commonly referred to as a *Thomas* finding. In *Thomas* v. *Sports Chalet, Inc.* (1977) 42 Cal.Comp.Cases 625, 626-627, "[t]he Board . . . concluded that . . . Labor Code Section 5100.6 prohibits the settlement of vocational rehabilitation rights [except in] those cases in which there is a good faith issue which if resolved against the applicant would defeat the applicant's claim for all benefits."[3] On September 27, 1993, defendant insurer sent applicant's attorney the following written message: "Please claim your attorney fees to date since he has declined rehab but we had paid him from 6/30/93- . . . 9/9/93 . . . ."[4]

A work evaluation report sent to the parties on September 29, 1993, states that applicant received and participated in evaluation services from September 21, 1993, to September 28, 1993. The report also states that applicant "was able to understand English, however, was unable to read English."

---

[3]Labor Code section 5100.6 provides in pertinent part: "[T]he appeals board shall not permit the commutation or settlement of compensation or indemnity payments or other benefits to which the employee is entitled under rehabilitation."

[4]An order approving attorney fees of $177.89 for services regarding rehabilitation (temporary disability payments of approximately $1482.48) was served on the parties on October 8, 1993.

On October 4, 1993, defendants filed a "Request for Termination of Rehabilitation Services" which was apparently received by applicant's attorney on October 7, 1993. The request contained a "NOTICE TO EMPLOYEE" which states: "If you object to this request, you (or your attorney, if you are represented) must submit your written objections and the reasons for them to the Rehabilitation Unit within 20 days of receipt of this request. The objection should be made on the 'Request for Dispute Resolution' (DWC Form 103) and a copy must be sent to the employer/insurer. The Rehabilitation Unit will determine if vocational rehabilitation services were sufficient or if you are entitled to further services." No objection was filed by applicant within the 20 days.

On November 29, 1993, applicant filed a DWC form RU-103, in which he contended "that a C & R [compromise and release] of future vocational rehabilitation is contrary to law." On December 14, 1993, the rehabilitation unit served applicant's attorney with a "Determination of the Rehabilitation Unit" which states: "The W. Herreras firm is advised that a timely objection was not filed to the request for termination of rehabilitation services (RU-105) dated 10/4/93. Therefore the same is deemed granted. [¶] The W. Herreras firm must now file a 'Petition to Reopen' showing good cause pursuant to L.C. 5410 . . . before this office can consider a reinstatement of the rehabilitation process. [¶] This order is final. Aggrieved parties who wish to appeal must file an appeal with the Workers Compensation Appeals Board within twenty (20) days." Applicant did not appeal within 20 days.

On February 17, 1994, applicant filed a petition to reopen rehabilitation which states: "The applicant contends that he was required to sign the RU-107, in order to receive his Compromise and Release settlement." The rehabilitation unit denied the petition on March 18, 1994. The rehabilitation unit found that applicant's reasons for reopening were not sufficient to come within Labor Code section 5410 and that, if his allegations were correct, he should have timely objected to termination.

On March 21, 1994, applicant appealed, stating that "he understood that he could not obtain the Compromise and Release proceeds unless he declined vocational rehabilitation." He argued that "WCAB Rule 10017 only requires that the applicant have a 'change of mind' regarding participating in vocational rehabilitation."[5]

At the June 23, 1994, hearing the matter was submitted on the moving papers. The parties stipulated "as an offer of proof to the facts contained in appellant's appeal of the Decision and Order of the Rehabilitation Bureau."

---

[5]Title 8, section 10017, subdivision (a), reads in relevant part: "The employee may, following bureau determination of conclusion of vocational rehabilitation services . . . , request the bureau to make a determination of his or her need for and entitlement to

In his opinion on decision the workers' compensation judge (WCJ) said, "The only real bonafide [*sic*] question, in the undersigned's opinion, is whether or not Applicant has shown good cause to reopen." The WCJ further stated: "An injured worker may choose to have or decline a Compromise & Release and take his or her chances with a trial and with a potential award, where he or she may receive greater or lesser benefits and may or may not have the right to future medical. This is simply a matter of bargaining. And while it is true that future rights to rehabilitation may not be settled, the legislature has allowed parties to waive rights and decline them." The WCJ pointed out that "[w]here there is a declination under the rules, Section 10017 allows a reopening where there has been a change of circumstances. In the undersigned's opinion, a change of circumstances is something more than an injured worker simply changing his or her mind and saying that he or she now wishes this benefit. A change of circumstances must be something where the Applicant was, for example, unable to participate because of the need to take care of a family member, being outside of the country, having other medical conditions that would prohibit participation, or a variety of other things. A change of mind is simply not . . . a change of circumstances." The WCJ denied the appeal.

Applicant petitioned for reconsideration. In their answer to the petition, defendants stated: "In its determination of applicant's Petition to Reopen dated March 18, 1993[,] the rehabilitation consultant properly cites applicant's failure to object to termination as foreclosing consideration of applicant's claim that he had to decline rehabilitation to get his Compromise and Release. Aside from the fact that applicant's claim is specious, it is an attempt to use a Petition to Reopen instead of having properly made an objection to the termination request."

In his report on reconsideration, the WCJ reiterated his reasons for denying the appeal and added, "The undersigned certainly does not dispute the fact that rehabilitation benefits may not be settled, but significant changes have occurred in the law that do permit declinations of rehabilitation . . . . The undersigned does not believe it is within the undersigned's authority to alter, change, amend or modify the statutory scheme set out by the [L]egislature in [Labor Code] sections 4641, 4644 and 5410."

In denying reconsideration, the board adopted the WCJ's report and further stated: "We agree that applicant must establish good cause to re-open

reinstatement of vocational rehabilitation benefits when: [¶] . . . [¶] (3) The employee can substantiate that . . . the circumstances which caused the qualified injured worker to be unavailable for or decline the provision of vocational rehabilitation services have changed . . . or [¶] (4) The conclusion of vocational rehabilitation services was based on incorrect information or error of the bureau."

the previously closed rehabilitation issue, and that under appropriate circumstances not presented here a change of mind based upon changed, established circumstances could be good cause."

This court denied applicant's petition for writ of review. Subsequently the California Supreme Court granted review and directed this court to vacate its order denying the petition. The Supreme Court's order referred to title 8, section 10870.

## DISCUSSION

We originally denied the petition for writ of review because the record indicated that applicant had voluntarily declined rehabilitation and that his doing so was not a condition of the compromise and release. We noted that the agreement stated in boldface type that defendants were not released from any claim applicant had for rehabilitation benefits. We concluded that a *Thomas* finding was not required under these circumstances.

We also decided that the board was correct in denying reopening of rehabilitation based only on a change of mind where applicant had not filed a timely objection to the termination of rehabilitation services.

We were concerned that applicant's attorney stated in the petition to reopen that applicant contended he was "required" to sign the DWC form RU-107 in order to receive the benefits of the compromise and release. However, other than this statement there is nothing in the record indicating the circumstances under which applicant declined rehabilitation benefits. There is no declaration from applicant or his attorney as to who required applicant to sign the DWC form RU-107 and no evidence that defendants required him to do so.

Similarly, the appeal from the rehabilitation unit's decision states that applicant "understood" that he would not receive the benefits of the compromise and release unless he declined rehabilitation benefits. However, the appeal does not state how applicant came to that understanding and does not state that defendants' conduct led to that understanding.

We were also concerned that the WCJ used the term "bargain" when referring to the circumstances under which applicant declined benefits. However, the WCJ made it clear that he was basing his decision on applicant's failure to object to termination of rehabilitation and his failure to state good cause for reopening and not on a belief that applicant could bargain away his rehabilitation benefits.

 After reviewing the record and the applicable law, we are still of the opinion that, based on the information before it, the board was not required to make a *Thomas* finding under these circumstances. Applicant stated in the compromise and release that he had "no interest" in participating in rehabilitation. He certainly could not be forced to do so against his will. (Lab. Code, § 4641.)[6]

Labor Code section 4641 does not affect Labor Code section 5100.6's prohibition against the "settlement" of rehabilitation benefits. However, it does provide a procedure for declining rehabilitation services even if the worker's case does not come within the provisions set forth in section 10870. Therefore, a declination under Labor Code section 4641 does not require a *Thomas* finding. The reference to a declination in a compromise and release does not bring that agreement within the provisions of section 10870 or violate Labor Code section 5100.6.

 After applicant declined rehabilitation benefits, it was appropriate for the employer to request the termination of rehabilitation services. (Lab. Code, § 4644.)[7]

Applicant did not timely object to the termination of services within the period he was required to do so. Under ordinary circumstances, he would thereafter be subject to the provisions of Labor Code section 5410.

However, all aspects of the workers' compensation law, including vocational rehabilitation, must be liberally construed in favor of the injured worker (*Vasquez* v. *Workers' Comp. Appeals Bd.* (1991) 226 Cal.App.3d 867, 874 [277 Cal.Rptr. 102]; *Veilleux* v. *Workers' Comp. Appeals Bd.* (1985) 175 Cal.App.3d 235, 241 [220 Cal.Rptr. 568]).

---

[6]Labor Code section 4641 which became effective January 1, 1990, states: "Nothing in this article shall require an employee to accept the provision of vocational rehabilitation services. The administrative director shall prescribe by rule and regulation the form and manner by which an employee may decline participation. [¶] The rules and regulations shall require all of the following: [¶] (a) A complete written description of the employee's rights, benefits, and protections to enable the employee to make an informed decision concerning the declination of vocational rehabilitation services. [¶] (b) Notice of the employee's right to consult with the administrative director or an attorney. [¶] (c) The declination of vocational rehabilitation services shall be in writing in 10-point boldface type and shall be signed by the employee and his or her representative, if any. [¶] (d) The written information and declination form shall be bilingual as needed." The form signed by applicant complies with the statutory requirements, but is written entirely in English.

[7]Labor Code section 4644, subdivision (a) reads in relevant part: "The liability of the employer for vocational rehabilitation services shall terminate when any of the following events occur: [¶] (1) An employee who has received notice of potential eligibility to participate in a rehabilitation plan under Section 4637 declines vocational rehabilitation services in the form and manner prescribed by the administrative director."

In *Thomas*, the board referred to recommendations in the April 1965 report of the California Workmen's Compensation Study Commission. One of the recommendations stated: " '*The worker should have no right to convert his right to rehabilitation into cash;* proposed compromise and release agreements should be screened . . . to see the suitable candidates are encouraged to avail themselves of their right to rehabilitation . . . .' " (*Thomas* v. *Sports Chalet Inc., supra,* 42 Cal.Comp.Cases at p. 629, original italics.) The board also noted that such screening "would also have the effect of assuring that an injured worker was not misled into believing he was releasing his claim to vocational rehabilitation benefits." (*Id.* at p. 630.)

Defendants allege that applicant's claim he was required to waive rehabilitation benefits is specious. However, based on the concerns expressed in *Thomas*, applicant may be entitled to reopen rehabilitation even if the declination of rehabilitation was not a condition of the compromise and release or even if the defendants' actions did not lead him to believe a declination was required.

This would be so if the circumstances under which he entered into the compromise and release led him to believe he was required to waive his right to future rehabilitation. In that case, applicant could have concluded it would be futile to object to the termination of rehabilitation benefits.

The record indicates applicant was unable to read English. There is nothing in the record indicating that applicant received a Spanish language copy of the declination form or of the compromise and release. Applicant should not be made to suffer if he was not adequately informed of the legal impact of those documents.

Neither the WCJ nor the board, as triers of fact, determined the veracity of applicant's claim that he was required to waive his workers' compensation benefits in order receive the benefits of the compromise and release. Nor did they determine whether he was misled into believing that, in spite of the disclaimer in the compromise and release, he had waived his right to future rehabilitation benefits. Therefore, the matter will be remanded to the board to determine if there is credible evidence applicant believed he was required to decline rehabilitation benefits in order to receive the benefits of the compromise and release; or believed it would be futile to object to the termination of rehabilitation.

If it is determined that applicant did not understand the documents he signed, his petition to reopen rehabilitation should be granted. If not, applicant will be required to come within the provisions of Labor Code section

5410 to reopen rehabilitation. That section requires something more than a mere change of mind.

The decision of the Workers' Compensation Appeals Board denying reconsideration is annulled and the matter is remanded for further proceedings consistent with this opinion.

Gilbert, J., and Yegan, J., concurred.